Filed 10/4/13  LA Open Door Presbyterian Church v. Evangelical Christian Credit Union CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| LA OPEN DOOR PRESBYTERIAN CHURCH,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>EVANGELICAL CHRISTIAN CREDIT UNION,<br><br>    Defendant and Respondent. | B246853<br><br>(Los Angeles County<br>Super. Ct. No. BC488807) |

APPEAL from an order and judgment of the Superior Court of Los Angeles County.  Malcolm Mackey, Judge.  Affirmed.

Law Office of Mary Lee, Mary Lee; Paul H. Samuels for Plaintiff and Appellant.

Sheppard, Mullin, Richter & Hampton, Michael D. Stewart, Isaiah Z. Weedn for Defendant and Respondent.

_____

Appellant LA Open Door Presbyterian Church (LAOD) contends that the trial court improperly awarded attorney fees to respondent Evangelical Christian Credit Union (ECCU) after LAOD voluntarily dismissed its complaint against ECCU. We find that ECCU was entitled to an award of its fees pursuant to contract, and that the trial court did not abuse its discretion in the amount of fees awarded. Accordingly, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

LAOD filed a complaint against ECCU in July 2012. In its complaint, LAOD alleged that in approximately 2001, it purchased property along Wilshire Boulevard in Los Angeles with the intention of building a facility large enough to accommodate its more than 5,000 congregants. LAOD obtained a construction loan from ECCU in 2005. According to the complaint, ECCU agreed to fund the construction on the condition that J.D. Diffenbaugh, Inc. (Diffenbaugh) was selected as the general contractor. LAOD agreed to the condition, and Diffenbaugh agreed to complete construction by November 2007.

Construction was hindered by numerous delays, and by December 2010 construction was still not complete. The complaint alleged that ECCU stopped paying Diffenbaugh in December 2010, at which time construction ceased entirely. In early 2011, ECCU represented to LAOD that it would stop providing any money for the construction project unless LAOD executed a forbearance agreement in favor of ECCU. Based on ECCU's representations and due to economic duress, LAOD executed the forbearance agreement in February 2011.

In August 2011, again according to the complaint, LAOD discovered that ECCU had delayed the construction project for its own financial benefit, that it provided LAOD with an additional unsecured loan so as to avoid liability relating to the construction delay, and that it caused LAOD to enter into the forbearance agreement in order to prevent LAOD from timely suing Diffenbaugh for breach of contract and so as to facilitate ECCU's ability to foreclose on the property. ECCU foreclosed on the property in February 2012.

2

LAOD's July 2012 complaint alleged five causes of action, for fraudulent inducement, wrongful foreclosure, breach of oral contract, declaratory relief, and unfair business practices. On the same day that it filed the complaint, LAOD recorded a lis pendens against the property. ECCU moved to expunge the lis pendens, and its motion was granted in October 2012. In connection with the motion, ECCU was awarded $12,000 in attorney fees. LAOD filed a petition for writ of mandate in the Court of Appeal (B244719) seeking to overturn the trial court's ruling, but the petition was denied.

Meanwhile, ECCU filed a demurrer to the complaint. It argued that the forbearance agreement, which was attached to LAOD's complaint, included an express waiver of all claims by LAOD against ECCU. ECCU further contended that the forbearance agreement contained numerous factual recitals that undermined LAOD's case, including acknowledgments that at the time the forbearance agreement was executed (i) LAOD was already in default, (ii) LAOD owed ECCU over $28 million, (iii) LAOD was responsible for finishing the construction, and (iv) LAOD had no claims against ECCU.

Rather than oppose ECCU's demurrer, LAOD filed a first amended complaint in October 2012. The first amended complaint was similar to the original complaint, except that it contained two additional causes of action, for wrongful eviction and for conversion. In connection with these causes of action, LAOD alleged that ECCU obtained an improper eviction judgment and, with the assistance of the Sheriff's Department, forcibly removed LAOD employees and members from the property and refused to let them take their personal property.

ECCU filed a demurrer to the first amended complaint. Again, it argued that the forbearance agreement's express waiver provision and factual recitals caused the majority of LAOD's claims to fail. ECCU did not assert that the forbearance agreement provided a defense to the new causes of action, however, as it noted that the wrongful eviction cause of action had been dismissed and the events underlying the conversion claim postdated the forbearance agreement. LAOD opposed ECCU's demurrer, and ECCU

3

filed a reply. Then, on the day that ECCU's demurrer was set to be heard, LAOD filed a request for dismissal of the entire action without prejudice.

Following the voluntarily dismissal, ECCU filed a memorandum of costs and a motion to recover attorney fees. In the motion, ECCU asserted that the forbearance agreement contained an attorney fees clause that entitled it to recover the fees it expended in defending the action. The fees clause read in pertinent part as follows: "[LAOD] agrees to pay upon demand all of ECCU's costs and expenses, including ECCU's attorneys' fees and ECCU's legal expenses, incurred in connection with the enforcement of this Agreement. . . . Costs and expenses include ECCU's attorneys' fees and legal expenses whether or not there is a lawsuit . . . ."

In its reply brief, ECCU requested a total award of $181,933 in fees. On February 1, 2013, the trial court awarded to ECCU the full amount of this request. ECCU subsequently filed a "proposed judgment of dismissal" stating that LAOD's claims had been dismissed without prejudice and that ECCU was entitled to recover its fees and costs in the total amount of $184,288. This proposed judgment was entered and became the final judgment on April 17, 2013.

## DISCUSSION

LAOD appeals from the trial court's order awarding attorney fees.[1] LAOD argues that in order for a fees award to be proper the action must be subject to a contractual fees provision, and that the fees provision in the forbearance agreement did not cover ECCU's defense. ECCU counters that by basing its defense on the provisions of the forbearance agreement, it sought to enforce the agreement and was therefore entitled to an award of fees.

### I. Recovery of Fees

"Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express

---

[1]  An order awarding attorney fees following dismissal is appealable. (*California Licensed Foresters Assn. v. State Bd. of Forestry* (1994) 30 Cal.App.4th 562, 565, fn. 1.)

4

or implied, of the parties . . . ." (Code Civ. Proc., § 1021.) A prevailing party in litigation is entitled to recover its costs (Code Civ. Proc., § 1032, subd. (b)), and attorney fees which are authorized by contract, statute, or law are recoverable as costs (Code Civ. Proc., § 1033.5, subd. (a)(10)).

One scenario in which attorney fees are recoverable as costs is in an "action on a contract" that provides for fees. Civil Code section 1717, subdivision (a) provides, in pertinent part: "In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs." In order for this section to apply, the action must contain at least one contract claim that is "on the contract" containing the attorney fees provision. (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 615 (*Santisas*).) If an action involves contract claims as well as tort and other claims not on the contract, Civil Code section 1717 applies only to fees incurred litigating the claims that are on the contract. (*Santisas*, at p. 615.)

Fees incurred in connection with tort and other noncontract claims may still be recoverable as costs, however, if a contractual attorney fee provision is phrased broadly enough to encompass them. (*Santisas*, *supra*, 17 Cal.4th at p. 608; *Exxess Electronixx v. Heger Realty Corp.* (1998) 64 Cal.App.4th 698, 708 (*Exxess*).) "'[P]arties may validly agree that the prevailing party will be awarded attorney fees incurred in any litigation between themselves, whether such litigation sounds in tort or in contract.'" (*Santisas*, at p. 608.)

A primary issue presented in this case, therefore, is whether the forbearance agreement's attorney fees clause was phrased broadly enough to cover fees incurred by ECCU in defense of LAOD's claims, most of which were not "on the contract."

5

### A. The original four noncontract claims

The original complaint alleged four causes of action that were not "on the contract"—fraudulent inducement, wrongful foreclosure, breach of oral contract,[2] and unfair business practices. These causes of action were also pled in the first amended complaint.

Because the causes of action were not "on the contract," they were not subject to Civil Code section 1717. (*Santisas*, *supra*, 17 Cal.4th at p. 615.) Ironically, had they been on the contract, ECCU could not have recovered its attorney fees based on LAOD's dismissal. (*Id.* at p. 617.) This is because Civil Code section 1717, subdivision (b)(2) provides that "[w]here an action has been voluntarily dismissed or dismissed pursuant to a settlement of the case, there shall be no prevailing party for purposes of this section."

In contrast with Civil Code section 1717, under the general cost recovery statute a "prevailing party" includes "a defendant in whose favor a dismissal is entered." (Code Civ. Proc., § 1032, subd. (a)(4).) Dismissal was entered in favor of ECCU. Therefore, whether recovery of fees for the defense of LAOD's original noncontract causes of action was authorized by contract and recoverable as costs, pursuant to Code of Civil Procedure section 1033.5, depended on the language of the forbearance agreement's fees provision. (*Santisas*, *supra*, 17 Cal.4th at pp. 617-618; *Exxess*, *supra*, 64 Cal.App.4th 698, 708.) If the provision was phrased broadly enough to cover the claims and defenses asserted, then an award of fees to ECCU was appropriate. (See *Santisas*, *supra*, 17 Cal.4th at p. 608; *Exxess*, *supra*, 64 Cal.App.4th at p. 708.)

Two cases, *Exxess* and *Gil v. Mansano* (2004) 121 Cal.App.4th 739 (*Gil*), are instructive. Both cases contained attorney fees provisions that were somewhat similar to the fees provision here. In *Exxess*, the contract provided: "'If any Party or Broker brings an action or proceeding to enforce the terms hereof or declare rights hereunder, the Prevailing Party . . . or Broker in any such proceeding, action, or appeal thereon, shall be

---

[2] The cause of action on the oral contract was not based "on the contract," that is, the written forbearance agreement, which did contain an attorney fees provision.

entitled to reasonable attorney's fees.'" (*Exxess*, *supra*, 64 Cal.App.4th at pp. 702-703.) In *Gil*, the provision read: "'In the event action is brought to enforce the terms of this [Release], the prevailing party shall be paid his reasonable attorney[] fees and costs incurred therein.'" (*Gil*, *supra*, 121 Cal.App.4th at p. 742.) In both cases, the defendants sought to recover fees for the defense of tort claims, and in both cases their requests were denied. The court in *Exxess* held that fees were not recoverable because, among other reasons, "tort claims do not 'enforce' a contract." (64. CalApp.4th at p. 709.) In *Gil*, the court found that the fees clause required "action brought to enforce the terms of the release," and the plaintiff's fraud action was not an action to enforce the release, nor was the defendant's assertion of the affirmative defense of release an action. (121 Cal.App.4th at p. 745.)

The fees provision in the instant case provided: "[LAOD] agrees to pay upon demand all of ECCU's costs and expenses, including ECCU's attorneys' fees and ECCU's legal expenses, incurred in connection with the enforcement of this Agreement." This provision is similar, but not effectively identical, to the provisions in *Exxess* and *Gil*, which both required "an action" be brought to enforce the agreement before fees could be awarded. The fees provision here did not apply only in the event an action was brought. Instead, it provided that recoverable "[c]osts and expenses include ECCU's attorneys' fees and legal expenses whether or not there is a lawsuit."

Thus, in this case, it was not required that an action be brought to enforce the terms of the forbearance agreement before fees could be awarded. Rather, fees "incurred in connection with the enforcement" of the agreement were recoverable. This distinction is critical. As noted by the court in *Exxess*, the defendant's act of asserting a defense based on a contractual "as is" clause may have had the effect of enforcing the terms of or declaring rights under a lease, but it did not constitute the bringing of an action to do so. (*Exxess*, *supra*, 64. Cal.App.4th at p. 712.) In *Gil*, the court noted that the defendant could have recovered fees for asserting the affirmative defense of release if the fees provision applied to any case "in which a party asserted his or her rights under the release." (*Gil*, *supra*, 121 Cal.App.4th at p. 745.) Here, the attorney fees provision was

7

phrased more broadly than those in *Exxess* and *Gil*. Under the provision, ECCU was entitled to recover fees incurred in connection with enforcing the forbearance agreement. It did not have to bring an "action" to do so.

In its demurrers to the original and first amended complaints, ECCU raised the terms of the forbearance agreement as a primary defense. By asserting that LAOD's claims were barred by the forbearance agreement's express release and related provisions, LAOD sought to enforce the agreement. The assertion of this defense fell within the terms of the attorney fees provision. Because recovery of fees was authorized by contract and allowable as costs pursuant to Code of Civil Procedure section 1033.5, subdivision (a)(10), and because ECCU was the prevailing party under Code of Civil Procedure section 1032 by virtue of the dismissal, ECCU was properly awarded fees for its defense of the causes of action that were not "on the contract."

## B. Remaining claims

LAOD alleged three additional causes of action—declaratory relief (pled in both the original and first amended complaint) and wrongful eviction and conversion (pled only in the first amended complaint).

LAOD's declaratory relief claim alleged a controversy regarding the "validity, enforceability and interpretation of the Forbearance Agreement." Declaratory relief claims such as this one are "on the contract" for purposes of Civil Code section 1717. (*Exxess*, *supra*, 64 Cal.App.4th at p. 707.) As noted above, Civil Code section 1717, subdivision (b)(2) provides that "[w]here an action has been voluntarily dismissed . . . there shall be no prevailing party for purposes of this section." Moreover, in the demurrer to the first amended complaint, ECCU acknowledged that neither the third cause of action for wrongful eviction nor fifth cause of action for conversion was affected by the release in the forbearance agreement. Thus, attorney fees would generally not be awardable in connection with these claims. (See *Exxess, supra,* at p. 707; *Santisas*, *supra*,17 Cal.4th at p. 617.)

However, "[a]ttorney's fees need not be apportioned when incurred for representation on an issue common to both a cause of action in which fees are proper and

8

one in which they are not allowed." (*Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124, 129-130.)  Here, we do not find that the trial court erred by declining to apportion fees that were awardable and those that were not.  Pursuant to Government Code section 68081, this Court afforded the parties the opportunity to brief whether apportionment was called for in this case.  LAOD did not identify any fees that were incurred strictly in connection with the declaratory relief, wrongful eviction, and conversion claims, and which were not intertwined with the defense of the other claims.  Thus, even though LAOD's complaints contained certain causes of action for which recovery of fees was not allowed, apportionment was not required.  (See *Amtower v. Photon Dynamics, Inc.* (2008) 158 Cal.App.4th 1582, 1603-1604 [trial court did not abuse its discretion by refusing to apportion fees].)[3]

## II. Amount of Fees

LAOD further contends that the trial court's award of fees to ECCU was excessive.  We review the trial court's award for abuse of discretion, determining whether the award exceeded the bounds of reason.  (*Christian Research Institute v. Alnor* (2008) 165 Cal.App.4th 1315, 1323; *Dove Audio, Inc. v. Rosenfeld, Meyer & Susman* (1996) 47 Cal.App.4th 777, 785.)  "We may not reweigh on appeal a trial court's assessment of an attorney's declaration.  [Citation.]  'The trial court, with declarations and supporting affidavits, [is] able to assess credibility and resolve any conflicts in the evidence.  Its findings . . . are entitled to great weight.  Even though contrary findings *could* have been made, an appellate court should defer to the factual determinations made by the trial court when the evidence is in conflict.  This is true whether the trial court's ruling is based on oral testimony or declarations.  [Fn. omitted.]'  [Citation.]"  (*Christian Research Institute*, at p. 1323.)

---

**3**      ECCU's request for judicial notice, filed on September 13, 2013, in which ECCU requests notice of a recently filed complaint by LAOD against ECCU, is denied because the material is irrelevant to the matters at issue on this appeal.  (See *Doe v. City of Los Angeles* (2007) 42 Cal.4th 531, 544, fn. 4.)

Although we feel that the trial court's award of $181,933 in fees[4] was generous, we cannot say that the award exceeded the bounds of reason. The trial court litigation, which lasted for approximately six months, was heated, involving two demurrers, contentious lis pendens proceedings, depositions, and ex parte hearings. Furthermore, the stakes were high. LAOD sought compensatory damages of $30,000,000, punitive damages, and return of the subject real property. Given these factors, the trial court's award was not an abuse of discretion.

## III. **Judgment**

Finally, LAOD argues that the judgment of dismissal entered by the trial court on April 17, 2013, was procedurally improper. This argument is not well taken.

A defendant who seeks recovery of costs need not file a proposed judgment after a plaintiff's voluntary dismissal. (*Fries v. Rite Aid Corp.* (2009) 173 Cal.App.4th 182, 183.) But the defendant, if it chooses, may submit a proposed judgment following a voluntary dismissal, and the trial court may properly enter such a judgment. (See *id.* at pp. 186-187; *Boonyarit v. Payless Shoesource, Inc.* (2006) 145 Cal.App.4th 1188, 1192-1194.)

The judgment entered by the trial court here accurately reflected the outcome of the case. It stated that LAOD dismissed the case without prejudice, and that ECCU was awarded a total of $184,288 in fees and costs. The judgment of dismissal, therefore, was proper.

---

[4]     As stated in the record, this amount was inclusive of the $12,000 awarded to ECCU on its successful motion to expunge lis pendens.

10

## DISPOSITION

The order awarding fees and costs and the judgment are affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


BOREN, P.J.

We concur:


CHAVEZ, J.


FERNS, J.*

_____

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice
pursuant to article VI, section 6 of the California Constitution.

11